UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------
SHIVA STEIN,                                            :
                                                        :
       Plaintiff,                                       :  Civil Action No. 1:21-cv-3152
                                                        :
v.                                                      :  **COMPLAINT FOR VIOLATIONS OF**
                                                        :  **SECTIONS 14(a) AND 20(a) OF THE**
BOINGO WIRELESS, INC., LANCE                            :  **SECURITIES EXCHANGE ACT OF**
ROSENZWEIG, MAURY AUSTIN, ROY H.                        :  **1934**
CHESTNUTT, MICHELE V. CHOKA,                            :
CHUCK DAVIS, MIKE FINLEY, DAVID                         :  **JURY TRIAL DEMANDED**
HAGAN, TERRELL JONES, and KATHY                         :
MISUNAS,                                                :
                                                        :
       Defendants.                                      :
----------------------------------------------------------  :

    Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

    1.    This is an action brought by Plaintiff against Boingo Wireless, Inc., ("Boingo Wireless or the "Company") and the members Boingo Wireless' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Boingo Wireless and Digital Colony Management, LLC and its affiliates ("Digital Colony").

    2.    Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy

Statement") to be filed on April 9, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby White Sands Bidco, Inc., an affiliate of Digital Colony, will merge with and into Boingo Wireless with Boingo Wireless surviving as a wholly owned subsidiary of White Sands Parent, Inc., an affiliate of Digital Colony (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Boingo Wireless stockholder will receive $14.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Boingo Wireless' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, TAP Advisors, LLC ("TAP") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Boingo Wireless' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because TAP Advisors, the financial advisor of the Company for the Proposed Transaction, is headquartered in this District; Simpson Thacher & Bartlett LLP, the legal advisor for Digital Colony, is headquartered in this District; and finally, the Company is listed with the NASDAQ Stock Exchange, also headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Boingo Wireless stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Lance Rosenzweig has served as a member of the Board since July 2014, as Lead Independent Director since August 2017, and as Chair of the Board since March 2019.

11. Individual Defendant Maury Austin has served as a member of the Board since June 2016.

12. Individual Defendant Roy H. Chestnutt has served as a member of the Board since August 2019.

13. Individual Defendant Michele V. Choka has served as a member of the Board since December 2018.

14. Individual Defendant Chuck Davis has served as a member of the Board since August 2011.

15. Individual Defendant Mike Finley has served as a member of the Board since August 2013 and is also the Company's Chief Executive Officer.

16. Individual Defendant David Hagan has served as a member of the Board since November 2004.

17. Individual Defendant Terrell Jones has served as a member of the Board since June 2013.

18. Individual Defendant Kathy Misunas has served as a member of the Board since June 2016.

19. Defendant Boingo Wireless a Delaware corporation and maintains its principal offices at 10960 Wilshire Blvd., 23rd Floor, Los Angeles, California 90024. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "WIFI."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

22. Boingo Wireless, together with its subsidiaries, provides wireless connectivity solutions for smartphones, tablets, laptops, wearables, and other wireless-enabled consumer devices worldwide. The Company operates through five segments: Carrier Services, Military,

Multifamily, Legacy, and Private Networks and Emerging Technologies. The Carrier Service segment provides distributed antenna systems (DAS), Wi-Fi offload, tower, and small cell networks at managed and operated locations. The Military segment offers high-speed Wi-Fi services for residential consumers on military bases. The Multifamily segment provides high-speed Wi-Fi services for residential consumers at multifamily properties. The Legacy segment offers retail, advertising, and wholesale Wi-Fi services to consumers, network operators, device manufacturers, technology companies, enterprise software and services companies, venue operators, financial services companies, and advertisers. The Private Networks and Emerging Technologies segment designs and installs converged networks, including Wi-Fi, private LTE supporting LTE, LTE-M, and NB-IoT, citizens broadband radio services, DAS, and small cells; and provides network-as-a-service, professional, and data services for venues and non-telecom operators in verticals, such as airports, logistics/fulfillment, industrial manufacturing, sports stadiums, hospitals, on and off campus student housing, and military bases. It serves the carriers, telecommunications service providers, global consumer brands, and property owners, as well as troops stationed at military bases and Internet savvy consumers. The Company was formerly known as Project Mammoth, Inc. and changed its name to Boingo Wireless, Inc. in October 2001. Boingo Wireless was incorporated in 2001 and is headquartered in Los Angeles, California.

23. On March 1, 2021, the Company announced the Proposed Transaction:

> LOS ANGELES--(BUSINESS WIRE)--Boingo Wireless, Inc. ("Boingo" or "the Company") (NASDAQ: WIFI), the leading distributed antenna system ("DAS") and Wi-Fi provider that serves carriers, consumers, property owners and advertisers worldwide, announced today that it has entered into a definitive agreement and plan of merger to be acquired by an affiliate of Digital Colony Management, LLC ("Digital Colony"). Upon completion of the transaction, Boingo will transition from a public company to a privately held company.

Under the terms of the agreement, which has been unanimously approved by Boingo's Board of Directors, Digital Colony will acquire all the outstanding shares of Boingo common stock for $14.00 per share in cash through a merger, in a transaction valued at approximately $854 million, including the assumption of $199 million of Boingo's net debt obligations. The acquisition price represents a 23% premium to Boingo's closing price of $11.40 on February 26, 2021.

"We are pleased to have reached this agreement with Digital Colony, which will deliver significant and immediate value to Boingo's stockholders and concludes a robust strategic review process undertaken by Boingo over the past year," said Mike Finley, Chief Executive Officer of Boingo Wireless. "We believe Digital Colony's expertise owning and operating digital infrastructure businesses, combined with its relationships, resources and access to long-term, private capital markets, will provide greater flexibility for Boingo to continue advancing its business strategy."

Warren Roll, Managing Director of Digital Colony, added, "Boingo is a leader in indoor wireless infrastructure, operating networks that serve a large and growing addressable market. We look forward to working with the experienced Boingo team as they continue to develop and deploy reliable networks serving their diverse set of high-quality customers."

The transaction, which is subject to the receipt of Boingo shareholder approval, regulatory approvals and other customary closing conditions, is expected to close in the second quarter of 2021.

TAP Advisors is serving as exclusive financial advisor and provided a fairness opinion to Boingo's Board of Directors in connection with the transaction and Gunderson Dettmer is serving as legal counsel. Credit Suisse is acting as lead financial advisor and Truist Securities Inc. is acting as co-financial advisor to Digital Colony in connection with the transaction. Debt financing for the transaction is being led by Truist Securities Inc. along with Joint Lead Arrangers and Joint Bookrunners TD Securities and CIT. Simpson Thacher is serving as legal advisor to Digital Colony.

For further information regarding all terms and conditions contained in the definitive agreement, please see the Form 8-K the Company will file with the SEC in connection with this transaction.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Boingo Wireless' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

25. On April 9, 2021 Boingo Wireless filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by prepared management and given to and relied upon by TAP Advisors in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of the fairness opinions, that the management of the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and TAP Advisors with forming a view about stand-alone valuations. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that management provided

7

to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2030: Adjusted EBITDA; Cash EBITDA; and Company Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to TAP Advisors' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's after-tax unlevered free cash flows for the Company and line items to calculate the figures; (ii) the terminal/continuing value of the Company as calculated by TAP Advisors; (iii) the inputs and assumptions underlying the use of perpetual growth rate ranging from 2.0% to 3.0%; (iv) the inputs and assumptions underlying the discount rates ranging from 10.0% - 12.0% for the consolidated discounted cash flow analysis; 9.0% - 11.0% for the distributed antenna systems segment; 10.5% - 12.5% for the Military segment; and 12.5% to 14.5% for all other segments; and (v) the Company's weighted average cost of capital.

32. With respect to TAP Advisors' *Leveraged Buyout Analysis*, the Proxy Statement fails to disclose the basis for the following assumptions: (a) a 2030 exit strategy; (b) an 11.0% weighted average cost of capital, (c) 2.0% to 3.0% perpetual growth rates of Boingo's terminal year.

33. With respect to TAP Advisors' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the date of the closing of each selected transaction; (ii) the basis for choosing 15.0x-25.0x Cash EBITDA for the consolidated company and 18.0x-25.0x

Node Cash Flow for the DAS segment, 6.0x-10.0x Cash EBITDA for the Military segment, and 4.0x-8.0x Cash EBITDA for each of the Offload and PONET segments.

34. With respect to TAP Advisors' *Premium Paid Analysis*, the Proxy Statement fails to disclose the premiums paid in the transactions observed in the analysis.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy

Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Boingo Wireless within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Boingo Wireless, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Boingo Wireless, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Boingo Wireless, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: April 12, 2021                  **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com